# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK A. LAPINSKI, | : | CASE NO. 3:12-cv-02324-GBC |
| | : | |
| Plaintiff, | : | (MAGISTRATE JUDGE COHN) |
| | : | |
| v. | : | MEMORANDUM TO DENY PLAINTIFF'S |
| | : | APPEAL |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | Docs. 11,21,23,24 |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM TO DENY PLAINTIFF'S APPEAL

### I. Procedural History

On July 26, 2006, Mark A. Lapinski ("Plaintiff") filed a Title XVI application for Supplemental Security Income ("SSI"). (Tr. 67).

On April 17, 2008, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not entitled to SSI. (Tr. 10-23). Plaintiff appealed this decision. On October 13, 2010, the Honorable Judge William J. Nealon adopted the Magistrate Judge's Report and Recommendation to remand for a determination of Plaintiff's credibility. (Tr. 212).

On March 24, 2011, a second hearing was held before the ALJ, where Plaintiff appeared with counsel and testified, as did a vocational expert (Tr. 177-92). On June 20, 2011, the ALJ issued a decision finding that Plaintiff was not entitled to SSI because Plaintiff could perform sedentary work with the ability to alternate between sitting and standing / walking (Tr. 244). On September 20, 2012 the Appeals Council again denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.

On November 20, 2012, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 1383(c)(3), to appeal the decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1. On February 1, 2013, Commissioner filed an answer and administrative transcript of proceedings. Docs. 10,11. In May and July 2013, the parties filed briefs in support. Docs. 21,23,24. On May 1, 2014, the Court referred this case to the undersigned Magistrate Judge. On May 28, 2014, the parties consented to Magistrate Judge jurisdiction, and Plaintiff notified the Court that the matter is ready for review. Docs. 27,28.

## II.    Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more

than a mere scintilla" of evidence. <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999). It may be less than a preponderance. <u>Jones</u>, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

### A. Background

Plaintiff was 43 years old at the time of the ALJ's decision (Tr. 95, 250). He has a high school education (Tr. 104, 249). Plaintiff has past relevant work experience as a window installer (Tr. 101, 249), which the vocational expert described as medium to heavy exertional work (Tr. 46).

### B. Relevant Medical Evidence

The relevant time period is from July 26, 2006 (Tr. 67), Plaintiff's application filing date, through June 20, 2011, the date of the ALJ's decision (Tr. 250).

### 1. Treating Physician Mark Cruciani, M.D.

During the relevant period, from August 2006 through December 2010, Dr. Cruciani, a rheumatologist, treated Plaintiff for his impairments. He prescribed medication for Plaintiff's psoriatic arthritis[1] and chronic pain syndrome. Dr. Cruciani generally reported that Plaintiff's medications reduced his pain (Tr. 127, 147, 307, 309, 311-14, 324), and that Plaintiff was able to carry out his activities of daily living (Tr. 307-13). He also noted that medication controlled Plaintiff's skin condition (Tr. 311-12). Dr. Cruciani also generally reported that Plaintiff was neurologically intact (Tr. 308-15) and retained full muscle strength (Tr. 308, 311, 313). Despite Plaintiff's positive response to treatment and relatively normal clinical examinations, Dr. Cruciani opined in his treatment notes that it would be difficult for Plaintiff to maintain gainful employment (Tr. 307, 317).

Prior to hearing, the Plaintiff submitted progress notes from Dr. Mark Cruciani, his treating rheumatologist covering the period February 8, 2008 to December 15, 2010. (Tr. 307-318). In those progress notes, Dr. Cruciani identifies Plaintiff's prior medical history as significant for psoriatic arthritis, chronic pain syndrome, OA of multiple sites, degenerative disc disease and fibromyalgia

---

[1] Up to 30 percent of people with psoriasis also develop psoriatic arthritis, which causes pain, stiffness and swelling in and around the joints. Treatment for psoriatic arthritis can relieve pain, reduce swelling, help keep joints working properly and possibly prevent further joint damage. See National Psoriasis Foundation, available at: http://www.psoriasis.org/psoriatic-arthritis (last visited in September 2014).

and on multiple reports noted "psoriatic lesions" and on December 15, 2010 (3 months prior to hearing) characterized his observation as "severe psoriatic lesions." (Tr. 307).

### 2. Consultative Examiner Paul Horchos, D.O.

On December 5, 2006, Paul Horchos, D.O., consultatively examined Plaintiff (Tr. 132-39). Plaintiff claimed that he was unable to work due to pain in his knees, back, shoulders, and hands (Tr. 132). He claimed that these problems stemmed from a motorcycle accident in 1991 (Tr. 132). Dr. Horchos concluded that Plaintiff's medical complaints were more related to his psoriatic arthritis (Tr. 132). Upon examination, Dr. Horchos reported that Plaintiff had an "essentially full" cervical range of motion and adequate forward flexion and extension, a normal elbow range of motion, and adequate muscle bulk (Tr. 134). His grip strength was fair and he could make a fist with his hands, though he had some arthritic changes (Tr. 134). Plaintiff's lumbar range of motion was somewhat impaired, but this was "probably as a self-limited phenomena" (Tr. 134). His lumbar paraspinal musculature revealed minimal spasm on the right side, but no significant loss of range of motion (Tr. 134). Plaintiff's knees showed some crepitance with movement, but it did not appear that his knees were unstable and his leg strength was adequate (Tr. 134). He walked with a smooth and relatively non-antalgic gait, and could heel and toe walk adequately well (Tr. 134).

After examining Plaintiff, Dr. Horchos opined that Plaintiff could occasionally lift and carry up to ten pounds, stand and walk up to four hours in an eight-hour day, had no limitations in sitting, had limitations in reaching, handling, and fingering, and could occasionally perform postural activities (Tr. 136-37). He opined that Plaintiff's psoriatic arthritis did not impair his ability to perform his activities of daily living, but may impair his ability to perform prolonged heavy-type labor (Tr. 134). Dr. Horchos also opined that Plaintiff's psoriatic arthritis would impair his ability

to perform heavy-duty labor, but he should have an adequate ability to perform some lighter tasks with his hands even repetitively (Tr. 135). He further opined that Plaintiff's medication regime did not affect his sensorium to the point that it would be difficult for him to function from a cognitive standpoint (Tr. 135).

### 3. Michael Jalowiec, D.O.

On August 4, 2007, an MRI of Plaintiff's knees showed a progression of degenerative changes with a small tear in the posterior horn of the medial meniscus with communication to the inferior articular surface, joint effusion and fluid in the prepatellar and suprapatellar bursa, and a degenerative signal in the proximal tibia and narrowing of the medial compartment of the knee with thinning of the articular cartilage (Tr. 142-43).

### 4. Joseph Lombardo, M.D.

On January 22, 2008, a follow-up MRI of Plaintiff's right knee showed progression of degenerative changes with new edematous change within the medical aspect of the proximal tibia and medial femoral condyle, stable tearing of the posterior horn and medial meniscus with a newly described inner margin tear of the body of the medial meniscus, a strain of the lateral collateral ligament and lateral patella retinaculum, stable outward bowing of the medial collateral ligament with extrusion of the body of the medical meniscus, and moderate to large joint effusion (Tr. 144).

### C. Plaintiff's Hearing Testimony

At the first hearing in March 2008, Plaintiff testified that he lived with his girlfriend and shared the household chores with her (Tr. 31). He testified that he went for walks and went shopping (Tr. 31). Plaintiff testified that he could lift his legs about 75 to 90 degrees from a seated position; extend his arms and bring them back and reach overhead; and stand about 20 minutes before having

to sit or walk (Tr. 33-34). He testified that his doctors were not recommending surgery at this time (Tr. 30). Plaintiff testified that his Enbrel medication was "fantastic" (Tr. 39), though he was not currently taking it due to insurance problems (Tr. 35). He also testified that his other medications worked "very well" (Tr. 40).

At the second hearing, in March 2011, Plaintiff testified that he met with Dr. Cruciani every three months for medication refills (Tr. 284). He testified that his pain medications were "very effective" (Tr. 182). Plaintiff testified that the cream and skin gel also "work well" (Tr. 182). He testified that he exercised "as much as possible" and read books and magazines (Tr. 183).

### D. The ALJ's Decision

The ALJ proceeded through each step of the sequential evaluation process and found Plaintiff not disabled. The ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, psoriasis, psoriatic arthritis, degenerative joint disease of the bilateral knees, and degenerative disc disease of the lumbar spine (Tr. 242). The ALJ found, however, that these impairments were not of listing-level severity (Tr. 244). After considering the entire record, the ALJ then found that Plaintiff could perform sedentary work with the ability to alternate between sitting and standing/walking (Tr. 244). The ALJ also found that Plaintiff had a limitation in bilateral overhead reaching, and could do no more than occasional climbing, balancing, and stooping, and must avoid kneeling, crouching, crawling, and climbing of ladders, temperature extremes, humidity, vibrations, and hazards (Tr. 244). The ALJ additionally limited Plaintiff to simple, routine tasks and low stress (defined as only occasional decision-making and occasional changes in the work setting) (Tr. 244).

At the administrative hearing, the ALJ asked a vocational expert whether someone with Plaintiff's vocational profile could perform his past work or other work in the national economy (Tr.

249). The vocational expert testified that this hypothetical individual could not perform Plaintiff's past relevant work, but could perform a significant number of jobs in the economy, including the representative occupations of protective service worker, interviewer, and receptionist / information clerk (Tr. 249-50). Based on the vocational expert's testimony, the ALJ found that Plaintiff could not perform his past relevant work, but could perform a significant number of jobs in the national economy (Tr. 249-50). Therefore, the ALJ found that Plaintiff was not disabled under the Act (Tr. 250).

## IV.    Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that

a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A.     Plaintiff Allegations of Error

### 1.     ALJ Development of the Record

Plaintiff first argues the ALJ erred by failing to develop the record following remand from the District Court. Pl. Br. at 7-11, Doc. 21.

Plaintiff states at the remand hearing on March 24, 2011 the ALJ made the following statements / questions:

"ALJ: You know, specifically, were we are (INAUDIBLE) to the issue of credibility and I only have a few questions for you and then your counsel may have some questions for you. Then I 'm going to have some questions for the vocational expert. Again, your counsel may have some questions for her. If you don't here either of us, or don't here the question, let us know, okay." (Tr. 181).

"EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q From the date of the last hearing to present, have you worked at all?

Q And how often do you see Dr. [Cruciani]?

Q And what medications are you currently taking?

Q And is Dr. Krishiani still prescribing Xanax?

Q Are you getting any psychological care or counseling?

Q How effective have the MS Contin, Endocet, Neurontin, been for you?

Q How effective has the Xanax been?

Q And how about the cream and the gel?

Q Okay, do these medications cause you any side effects?

Q Okay. And other than medications, there anything you try to do to either to reduce or control your symptoms?

Q What do you read?

Q And do you notice anything in particular that either causes or aggravates your symptoms?

ALJ: Thank you, Counsel?" (Tr. 181-83).

Following the ALJ's questioning, Plaintiff gave testimony in response to questions from his attorney concerning his psoriasis:

"Q Mark, do you have skin eruptions or any effects of the psoriasis?

A. Yes, I, I have the lacerations on my elbows, both elbows, and my, my knees. On my right knee I have a breakout right now. And in my private areas, it's broken out.

Q Does that affect you moving about, particular in your, your [genital], general area?

A Yes, it's very, very uncomfortable. I have to watch the way I sit and walk, and I have to wear loose, loose clothing underneath. You know, boxers. I used to briefs and I switched to boxers and all that.

Q You were in my office last week and I took some photos. Are these accurate to show what your knees and your, your elbow was like the day you were in?

A Yes.

Q Do you still have evidence of what I'll call eruptions, right now? You told us about your knee and your, your - -

A Yes, sir.

Q - - area. How about your elbow?

A Yes, sir.

ATTY: Do you have an eruption? Judge, do you want to see his elbows or not?

ALJ: No, thank you.

ATTY: Okay.

ALJ: Do - - you have pictures of them there, don't you?

ATTY: Okay." (Tr. 185-86).

Plaintiff contends the ALJ did not ask questions regarding pain, psoriatic flare ups, and change in activity from last hearing. Plaintiff states the ALJ did not ask Plaintiff about his daily activities, the location, duration, frequency and intensity of his pain and other symptoms and any other factors concerning functional limits and restrictions due to pain or other symptoms. Pl. Br. at 7-11, Doc. 21.

At the second hearing, the ALJ re-questioned Plaintiff about his impairments to determine the ongoing severity of his complaints (Tr. 182-84). Then, pursuant to the remand order, in his decision, the ALJ evaluated Plaintiff's subjective complaints based on all of the evidence, including the additional hearing testimony and additional medical records (Tr. 246-49). Similar to the first testimony, at the second hearing Plaintiff testified that his medication was effective (Tr. 182). Like the earlier medical records, the additional medical evidence showed that Plaintiff's symptoms improved with treatment (Tr. 307, 309, 311-14). As a result, the ALJ's decision was based upon a sufficiently developed record. See 20 C.F.R. § 416.912(e) (stating that the ALJ does not need to further develop the record if the evidence received is adequate for the ALJ to determine whether the claimant is disabled).

"However, [Plaintiff's] current argument is that the ALJ did not and should have fully developed the issue of medication compliance. At the hearing, the ALJ asked [Plaintiff] what his current medication and therapy regimen were and if he went 'in for medication checks.' Subsequently, [Plaintiff's] counsel was provided adequate time to question [Plaintiff] and his mother regarding his symptoms and medication compliance. Plaintiff's counsel was given adequate opportunity to place testimony and evidence into the record regarding [Plaintiff's] symptoms or difficulty in medication compliance . . . Accordingly, it is determined that the ALJ sufficiently developed the record in this matter, and allowed [Plaintiff] an opportunity to present his claim." Martin v. Colvin, No. 4:11–CV–02378, 2014 WL 1235664, at *13 (M.D. Pa. Mar. 25, 2014).

"As for [Plaintiff's] claims that the administrative law judge failed to develop the record and demonstrated bias, [Plaintiff] is presently represented by the same attorney who advocated for her during the administrative proceedings [and] has [not] indicated how the administrative law judge failed to develop the record nor proffered any additional evidence, and we are unable to discern from the tenor of the ALJ's decision and the hearing transcript any inappropriate bias which would warrant a remand for a new hearing. Miller v. Astrue, No. 4:11–CV–00097, 2012 WL 896248, at *6 & n.17 (M.D. Pa. Mar. 15, 2012).

"Plaintiff's final argument is that a remand order is required because the ALJ did not comply with Judge Farnan's directive to further develop the record with respect to plaintiff's psychological test scores . . . Further addressing plaintiff's mental functional limitations, the ALJ weighed the opinions of two state agency consultants and gave more weight to the opinion that plaintiff had a mild, rather than a moderate, degree of limitation in activities of daily living and in social functioning, as the ALJ found that opinion more consistent with the record as a whole . . . the ALJ specifically noted Dr. Iqbal's test scores (and the court's concern over their treatment) and found Dr.

LeRoy's observations persuasive evidence that the two 'borderline' scores obtained by Dr. Iqbal did not affect plaintiff's RFC. Dr. LeRoy's observations constitute 'such relevant evidence as a reasonable mind might accept as adequate' to support the ALJ's conclusion under these circumstances. <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). The court does not re-weigh the evidence of record. Notwithstanding the foregoing, the ALJ's hypothetical question to the VE provided, amongst physical and postural limitations, that '[a]ny jobs would have to be just simple and routine in nature' in order to be performed by plaintiff. The ALJ's treatment of the two 'borderline' scores was harmless error, if erroneous at all . . . For the reasons discussed above, the court finds that the ALJ's decisions at steps two and four are supported by substantial evidence of record." <u>Brown v. Astrue</u>, 789 F. Supp.2d 470, 485-86 (D. Del. May 19, 2011).

Plaintiff states the ALJ had the ability to view color photos of Plaintiff's knees and elbows depicting psoriatic flare ups with swelling and lesions as well as a first-hand opportunity to view Plaintiff's condition during the hearing but declined to do so. Pl. Br. at 7-11, Doc. 21. A review of case law and the regulations demonstrates that photos are not medical evidence, and the ALJ is not required to consider photographs.

"Lastly, Plaintiff argues that the ALJ erred in refusing to review, consider, and/or admit into evidence color photos of Plaintiff that his attorney attempted to provide at the administrative hearing. Plaintiff asserts that these photos show that he has 'extensive nasal congestion.' This argument is with merit. First, Plaintiff previously provided black and white photos of the same nature to the ALJ, which are included in the record, and he has failed to explain how the color photos are demonstrably more informative than those photos. Moreover, [Plaintiff] testified at the hearing [what] the photos show . . . Thus, the ALJ certainly was aware of what the proffered photos depicted. More importantly, the ALJ indicated at the hearing that he typically does not rely on photos—or even on

a claimant's appearance in the hearing room—because '[t]hings that look bad could be benign, and things that don't look at all bad could be very serious. So I tend to rely mostly on the medical records.' The Court finds the ALJ's approach and reasoning to be sound, both in general, and in this case. The proffered photographs are not medical evidence because they were not provided by a medical source. While Plaintiff cites extensively to portions of 20 C.F.R. 404, Subpart H, which provide 'basic rules about what evidence is needed when a person claims [ ] disability ....' (§§ 404.702 (definition of 'evidence') and 404.709 ('preferred' and 'other' evidence)), 20 C.F.R. § 404.950 (presenting evidence at a hearing before the ALJ), and to the HALLEX, none of those constitute authority for the proposition that the ALJ was required to consider and/or admit into evidence the proffered color photographs. In fact, to the extent the most detailed of those regulations, § 404.709, is applicable, it belies Plaintiff's argument. It provides, in relevant part, '. . . unless we have information in our records that raises a doubt about the evidence, other evidence of the same fact will not be needed.' 20 C.F.R. § 404.709. As discussed above, the ALJ appropriately considered the relevant medical evidence, and had the added evidentiary benefit of the black and white photographs which were part of the record before him. Thus, the cited regulation does not support Plaintiff's argument. Moreover, § 404.709 does not seem applicable here. § 404.709 clarifies that it applies to the type of 'preferred' evidence discussed in Sections 404.715–780. Id. But, none of those sections pertain to disability benefit claims. Rather, as noted in Subpart H's introductory statement, 'there are special evidence requirements for disability benefits. These are contained in subpart P.' 20 C.F.R. § 404.701—Introduction. Plaintiff makes no argument with respect to Subpart P, and has therefore waived the issue. See McPherson v. Kelsey, 125 F.3d 989, 995-96 (Mich. Oct. 1, 1997). At any rate, a review of Subpart P shows that the ALJ did not err in failing to consider the color photographs proffered by Plaintiff. See, e.g., 20 C.F.R. § 404.1508—'What is Needed to Show

an Impairment' for disability benefits ('A physical or mental impairment must be established by medical evidence . . .'); § 1512(c) ('You must provide medical evidence showing that you have an impairment(s) and how severe it is . . .'); § 1513(d) ('In addition to evidence from the acceptable medical sources [ ] we <u>may</u> also use evidence from other sources . . .'). Nothing contained in Subpart P required the ALJ to consider the proffered color photographs, and he had before him more than enough medical and other evidence on which to base his decision." <u>Kirksey ex rel. S.C.W. v. Commissioner of Social Sec.</u>, No. 12–cv–14194, 2013 WL 3897141, at *11 & n.9 (E.D. Mich. July 29, 2013) (emphasis in original).

Similarly in this case, the ALJ had an extensive record to review the medical evidence as well as the testimony from two hearings, and the ALJ permitted Plaintiff to include scanned black and white photos in the record. (Tr. 325-28).

Plaintiff argues the photos are not mentioned in the decision. Pl. Br. at 18, Doc. 21; Pl. Reply at 4, Doc. 24. Although the photographs may not be specifically mentioned in the decision, this does not mean that the ALJ did not review them. <u>See Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001) (stating that there is no requirement for ALJ to discuss or refer to every piece of relevant evidence in the record, so long as the reviewing court can discern the basis of the decision). In addition, the ALJ noted that she considered all of the evidence of record. <u>See Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998) (stating that the mere failure to cite to specific evidence does not establish that the ALJ failed to consider it); <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993) (stating that the ALJ need not evaluate in writing every piece of evidence submitted).

The ALJ accounted for Plaintiff's impairments by limiting him to a reduced range of sedentary work. Remand to address the record more fully would be inappropriate because it would not change the Commissioner's ultimate decision. It is well settled that courts should affirm the

Commissioner's decision, even where there is error, if there is "no question that he would have reached the same result notwithstanding" the error. <u>Mickles v. Shalala</u>, 29 F.3d 918, 921 (4th Cir. 1994); <u>Rutherford v. Barnhart</u>, 339 F.3d 552 (3d Cir. 2005) (remand is not appropriate if the evidence does not affect the outcome). <u>Schrader v. Astrue</u>, No. 4:11–CV–902, 2012 WL 4504625, at *12 (M.D. Pa. Sept. 28, 2012) (the ALJ's failure to address specifically the statement of Plaintiff's mother in the decision was harmless error at most). In this case, the medical evidence would only be cumulative and would not add to the record that Plaintiff, doctors, and laboratory results did not already provide themselves. Therefore, the evidence has already been effectively considered by the ALJ and taken into account by the RFC assessment. Accordingly, remand for further consideration of the record would be unnecessary.

"'Because of the inquisitorial nature of Social Security proceedings, it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.' <u>Carmichael v. Barnhart</u>, 104 Fed. Appx. 803, 805 (3d Cir. 2004) (<u>citing Sims v. Apfel</u>, 530 U.S. 103, 111 (2000)). 'Such reasoning is further supported by the fact that a large portion of Social Security disability benefits claimants either have no representation at all or are represented by non-attorneys.' <u>Carmichael</u>, 104 F. App'x at 805 (<u>citing Sims</u>, 530 U.S at 111 (2000)). In this case, the ALJ appropriately developed the record. He elicited testimony from Plaintiff regarding her subjective complaints, daily activities, and treatment with her doctors. The ALJ's examination of the vocational expert developed favorable evidence both for and against granting benefits. Additionally, the ALJ kept the record open so that Plaintiff could submit additional medical records and offered to obtain those records to make it easier on Plaintiff's representative. The ALJ fulfilled his duty to fully develop the record." <u>See Clapper v. Colvin</u>, No. 12–1688, 2013 WL 6191139, at *8-9 (W.D. Pa. Nov. 26, 2013).

As further discussed below, the ALJ properly reviewed the record and the hearing testimony from the first and second hearings to evaluate Plaintiff's allegations of disability and develop the record on appeal.

## 2. ALJ Review of Opinion by Treating Physician

Plaintiff contends the ALJ erred in rejecting the opinion of Mark Cruciani, M.D., Plaintiff's treating physician, a rheumatologist. Pl. Br. at 7, 11-17, Doc 21. The ALJ evaluated the medical opinion in conjunction with a review of the record.

### a. ALJ Review and Findings for Opinion of Treating Physician

"The claimant has the following severe impairments: fibromyalgia, psoriasis, psoriatic arthritis, degenerative joint disease of the bilateral knees, and degenerative disc disease of the lumbar spine (20 CFR 416.920(c))." (Tr. 242).

"[T]he [ALJ] finds that the claimant's impairments, while severe, do not satisfy the requisite neurological, laboratory, clinical and / or diagnostic requirements for listing level severity. As further discussed below, physical examinations do not reflect the required neurological deficits, nor does the claimant have an inability to effectively ambulate or perform fine and gross movements, as defined in sections 1.00B2b, 1.0082c, 11.00C, 11.04B, and 14.00B6." (Tr. 244).

"There is no specific listing in the listed impairments for fibromyalgia, so disability cannot be presumed based solely on that diagnosis; however the [ALJ] did consider the presence of that impairment, in combination with the claimant's other impairments, at the third step of the sequential evaluation process and concluded that the claimant cannot be found disabled based on the medical factors alone." (Tr. 244).

"After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 C.F.R.

416.967(a), as follows: lifting and / or carrying up to ten pounds occasionally and frequently; standing and / or walking up to two hours in an eight-hour workday; and sitting up to six hours in an eight-hour workday. The claimant must be afforded the opportunity to alternate, at his discretion, between sitting and standing / walking. The claimant also has a bilateral overhead reach limitation. The claimant is also limited to no more than occasional climbing stairs, balancing, and stooping, but must avoid kneeling, crouching, crawling, and climbing ladders. He must avoid temperature extremes, humidity, vibrations, and hazards. He is limited to simple, routine tasks and low stress, defined as only occasional decision making and only occasional changes in the work setting." (Tr. 244).

"The [ALJ] incorporates by reference the initial decision in this matter, except for the discussion related to the evaluation of the claimant's credibility, subjective complaints and evaluation of pain." (Tr. 244).

"Although the claimant has been diagnosed with multiple medical conditions including fibromyalgia, psoriasis, psoriatic arthritis and chronic pain syndrome, the objective medical evidence does not support the claimant's allegations that he is unable to perform any work. The imaging reports of the bilateral ankles in 2003 revealed arthritic changes, while the imaging reports of the knees showed degenerative change in the menisci on the left knee and mild chondomalacia patellae in the right knee. The MRI of the lumbar spine also demonstrated moderately severe degenerative disc disease at L5-S1 with mild spondylosis, and mild degenerative disc disease at L4-5 with mild broad based central disc bulging. The medical records from the claimant's treating rheumatologist, Mark Cruciani, M.D. in 2005, noted tenderness in his lumbosacral region, as well as his joints, and marked lesions on his hands, elbows and knees; however it was further documented that the claimant had yet started taking the Enbrel medication that had been prescribed. On the August 2006 follow-up

note, the claimant had increased pain in his knees and muscles, and the examination revealed scaling of his elbows bilaterally, crepitation of both knees, and trigger point tenderness, but Dr. Cruciani indicated that claimant was doing better with the Enbrel." (Tr. 245-46) (emphasis added).

"The claimant was also evaluated on December 5, 2006 by Paul Horchos, D.O., concerning his disability claim. During the examination, the claimant had some mild discomfort in his bilateral parascapular and paracervical regions with extreme ranges of motion, but Dr. Horchos noted it did not impair his abilities to do activities. In addition, the claimant's bilateral upper extremities were asymmetric with some increased lag of abduction and forward flexion on his right side compared to his left side, and there were some arthritic changes noted on his bilateral hands, but grip strength was fair, with him being able to make a fist, and elbow range of motion was normal with adequate muscle bulk. His knees also revealed some crepitus with movement, but the patellar grind was not particularly bad, and his knees did not appear unstable. The claimant's lumbar paraspinal musculature revealed minimal spasm on the right side, and the lumbar range of motion was also somewhat impaired; however, Dr. Horchos indicated this probably was a self-limited phenomenon. The claimant's ambulation was smooth and relatively nonantalgic; he could toe and heel walk; leg strength was adequate; sensory testing was negative; there was no significant osteoarthritis identified in the toes nor was there any significant joint destruction; deep tendon reflexes in all extremities were intact; cervical range of motion was full; forward flexion and extension were adequate; and side bending and rotation were full. (Tr. 246) (emphasis added).

"Dr. Cruciani's report in February 2007, again referenced severe tenderness, but noted that the Enbrel was taking away a lot of the swelling in the claimant's joints and skin lesions. In August 2007 when it was noted the claimant had a flare-up of his symptoms, Dr. Cruciani documented that the claimant had stopped his Enbrel because of insurance issues." (Tr. 246) (emphasis added).

"The clinical findings on physical examination in Dr. Cruciani's report in February 2008 documented 16 out of 18 trigger points, marked changes of the fingernails bilaterally, psoriatic lesions on the hands, elbows, scalp, knees and buttocks, and tenderness with mild crepitation of the right knee; however the claimant was neurologically intact, and it was noted that his pain is decreased with his medication." (Tr. 247) (emphasis added).

"The [ALJ] notes that, in July of 2009, Dr. Cruciani indicated in his office note that the claimant's primary care physician will no longer accept him as a patient. The office note seems to imply that the claimant's primary care physician suspected drug-seeking behavior. However, Dr. Cruciani indicated in his note that he observed no such signs. Giving the claimant the benefit of every reasonable inference, the [ALJ] finds that there is insufficient evidence to establish drug-seeking behavior." (Tr. 247).

"In making a determination concerning the claimant's residual functional capacity, the opinion evidence was also considered. The consultative examiner, Dr. Horchos noted that the claimant's psoriatic arthritis did not impair the claimant's ability to his daily activities, but may impair his ability to perform prolonged heavy type labor. In addition, with regard to the psoriatic arthritis in the claimant's hands, Dr. Horchos indicated that the claimant had the ability to perform some lighter tasks with his hands including repetitively. Furthermore, Dr. Horchos opined that the claimant's medication regime did not appear to cloud his sensorium to the point where it would be difficult for the claimant to function from a cognitive standpoint. In completing a Medical Source Statement, Dr. Horchos found that the claimant could lift and carry up to ten (10) pounds occasionally, stand and / or walk up to four (4) hours, and had no limitations on sitting. He further opined that the claimant had no push / pull limitations; however found occasional postural limitations, as well as limitations on reaching, handling, and fingering, and noted the claimant should

avoid vibrations." (Tr. 248) (emphasis added).

"In reviewing the record as a whole, the opinion evidence from Dr. Horchos is mostly consistent with and supported by the objective evidence, and thus, his opinion is accepted except for his limitations on handling and fingering since the examination findings show no deficits concerning grip, or fine and dexterous movements. Exertional, postural, push / pull and reach limitations have been included in the residual functional capacity herein that are consistent with Dr. Horchos' opinion, however, in deference the claimant's subjective complaints the undersigned limited standing and walking to the sedentary level of 2 hours in an 8 hour day." (Tr. 248) (emphasis added).

"The record also contains an opinion from the claimant's treating physician, Dr. Cruciani, who noted on the February 8, 2008 progress note that he did not feel that the claimant was capable of gainful employment. In his treatment notes since the initial decision, Dr. Cruciani again indicated that "it will difficult for [the claimant] to maintain gainful employment. The Social Security accords controlling weight to the opinion of a treating physician where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence (20 C.F.R. § 404.1527(d)). However, this rule does not apply to statements of opinion upon the ultimate issue of disability, which is reserved to the Commissioner. (20 C.F.R. § 404.1527(e)). Therefore, this opinion is rejected since it is not well supported by the examination findings in the record. Although there is some evidence of scaling, swelling, tenderness, positive trigger points, and mild crepitus, there is no evidence of gait, station, reflex, motor, sensory, range of motion, or neurological deficits. Likewise, in September of 2010, aside from psoriatic lesions on the knee and elbows, Dr. Cruciani's findings on physical examination were entirely normal, with full muscle strength and no neurological deficits. The [ALJ] notes that the District Court has already determined that the [ALJ's] assignment of little weight to Dr. Cruciani's conclusory opinions were

correct." (Tr. 248) (emphasis added).

"The [ALJ] also notes that, since the initial decision, the claimant's primary care physician, Dr. Lombardo, submitted a note in which he indicated that, as a result of the claimant's many medical problems, he did not believe that the claimant could be gainfully employed. The [ALJ] rejects this opinion and, again, notes that the issue of disability is an issue reserved to the Commissioner. Furthermore, this opinion is not supported by Dr. Lombardo's own records. Dr. Lombardo did not reference any signs or laboratory findings and the record contains no new treatment records from Dr. Lombardo. Likewise, the [ALJ] notes that the District Court has already determined that the [ALJ's] assignment of little weight to Dr. Cruciani's conclusory opinions were correct and in the same sense Dr. Lombardo's conclusory opinion is likewise afforded little weight as this issue is exclusively reserved to the Commissioner." (Tr. 248-49).

"In sum, the above residual functional capacity is supported by the treatment records, the claimant's activities of daily living, and the record as a whole. The claimant is capable of doing a range of sedentary work on a sustained and continuous basis despite the limitations resulting from his impairments." (Tr. 249) (emphasis added).

"The claimant has not been under a disability, as defined in the Social Security Act, since July 26, 2006, the date the application was filed (20 C.F.R. 416.920(g))." (Tr. 250).

### b. Case Law and Analysis for Opinion of Treating Physician

Thus, the ALJ evaluated the record, objective evidence, and credibility to assign the weight deemed appropriate to the opinion of Mark Cruciani, M.D., Plaintiff's treating rheumatologist, in accordance with case law and Social Security regulations.

The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as

a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion. 20 C.F.R. § 404.1527(c)(4). A treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); Plummer, 186 F.3d at 429. If a treating source's opinion is not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion. Id. The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. Id. Likewise, the more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded. Id. The Commissioner is not bound by a treating physician's opinion, and may reject it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. Lyons-Timmons v. Barnhart, 147 F. App'x 313, 316 (3d Cir. 2005).

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361; Coleman v. Astrue, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The case law in this circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. Chandler, 667 F.3d 356 at 361. In so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." Cotter v.

Harris, 642 F.2d 700, 705 (3d Cir.1981). Mistick v. Colvin, No. 12-cv-1031, 2013 WL 5288261 (W.D. Pa. Sept. 18, 2013).

Plaintiff states the ALJ may not substitute her own conclusions, opinions or judgment for that of the physicians who present competent medical evidence of disability. Pl. Br. at 14, Doc 21. While this is true, the Third Circuit found in Chandler, 667 F.3d at 362, that the district court had erred in concluding that the "ALJ had reached its decision based on its own improper lay opinion regarding medical evidence." Id. "The ALJ– not treating or examining physicians or State agency consultants –must make the ultimate disability and RFC determinations." Id. at 361 (citing 20 C.F.R. 404.1527(e)(1), 404.1546(c)).

Even when an ALJ gives considerable weight to an opinion, he is not required to adopt an opinion wholesale and include every degree of limitation in the RFC. See, e.g., Lambert-Newsome v. Astrue, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) (noting the ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale."); Woodrome v. Astrue, 2012 WL 1657216, at *3 (W.D. Mo. May 10, 2012) (noting the ALJ did not adopt opinion by giving it great weight).

While MRIs showed some progression of degenerative changes (Tr. 142-44), the ALJ accounted for any resulting functional limitations by restricting Plaintiff to a modified range of sedentary work with an option to alternate between sitting, standing and walking (Tr. 244).

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional, but rather only the ones that she finds are credibly established by the record. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did not err by incorporating into her RFC finding only those limitations which she found to be credibly established by the objective medical evidence and the Court finds that the ALJ's RFC determination

as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial

record evidence. Finally, the Court finds that the ALJ evaluated the medical opinion evidence

properly and in accordance with the applicable rules and regulations and that substantial record

evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source

statements from the mental health providers were not given controlling weight the ALJ discussed

at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker

were inconsistent with and contradicted by the other medical evidence of record, including their own

notes and prior findings. The Court finds that the ALJ discharged her duty because she (i)

demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory

evidence in the record which conflicted with her findings, and (iii) explained why that contrary

evidence was rejected or not given controlling weight. See Cotter, 642 F.2d at 705. Indeed, the

overarching theme of the ALJ's decision was the complete lack of objective medical evidence which

corroborated or even tended to support Plaintiff's complaints of severely disabling impairments and

the Court agrees with the ALJ's finding that such corroborating evidence was woefully lacking in

the record. Plaintiff's subjective complaints were corroborated only by her own self-reports,

which—for the reasons discussed by the ALJ—were not particularly credible. To that end, the Court

finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's

arguments to the contrary are completely unpersuasive, particularly given the minimal treatment

record, the inconsistencies in the record that were highlighted and discussed by the ALJ . . .

Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination

of non-disability." Stewart v. Astrue, No. 13–73, 2014 WL 29035, at *1, n.1 (W.D. Pa. Jan. 2, 2014).

Similarly in this case, the record does not support Plaintiff's assertions of disabling severity.

Plaintiff's contentions of error are inconsistent with the objective evidence and activities of daily

living. From the ALJ's extensive review, substantial evidence supports the weight accorded to the allegations and opinions of record.

Thus, the ALJ's RFC finding includes only "credibly established limitations" and not all impairments alleged by claimant, Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Accordingly, the ALJ relied on the record and testimony in determining Plaintiff's residual functional capacity, and the findings are supported by substantial evidence.

### 3. ALJ's Credibility Determination

Plaintiff contends the ALJ erred by discounting her credibility. Pl. Br. at 6, 16-18, Doc 8. The ALJ reviewed the medical evidence, the entire record, and the hearing testimony from the first and second hearings to evaluate Plaintiff's allegations of disability and credibility.

### a. ALJ Review and Findings for Plaintiff's Credibility

"Although there is no diagnosis in the record concerning a psychological impairment, the medical records do indicate that the claimant was prescribed anti-anxiety medication from his rheumatologist. Other than the medication, there are no adverse mental status examination findings, nor has the claimant received treatment or counseling for psychological intervention." (Tr. 242).

"The first functional area is activities of daily living. In this area, the claimant has no limitation. The claimant is able to drive, shop, go for short walks, perform household chores, and attend to personal care." (Tr. 243) (emphasis added).

"The next functional area is social functioning. In this area, the claimant has no limitation. The claimant has not alleged any difficulties in this area. During the pendency of his application, he had gotten married." (Tr. 243).

"The third functional area is concentrating, persistence or pace. In this area, the claimant has mild limitation. While the claimant alleges difficulties focusing and maintaining concentration, he

testified that he reads novels and magazines to 'keep him sharp.'" (Tr. 243) (emphasis added).

"Although the [ALJ] found that the claimant's psychological impairment was non-severe, this condition in combination with the claimant's side-effects of medication and pain cause an increase in limitation to the claimant's concentration, pace and persistence. Thus, the [ALJ] finds that the claimant has moderate difficulties with concentration, persistence or pace. The remaining findings under the B criteria remain unchanged. An appropriate limitation was included in the following residual functional capacity." (Tr. 243) (emphasis added).

"The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. The claimant has not had any psychiatric hospitalizations or suicidal ideations." (Tr. 243).

"[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objection medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record. In this case, the claimant alleges that he is unable to work because of pain in his knees, ankles and lower back, as well as psoriasis, claiming he is unable to stand long, and [can] hardly bend. At the hearing, the claimant testified that he has pain on a daily basis in his back, knees, and ankles. He testified that his hands and knees swell. He alleges difficulties standing and sitting for prolonged periods. He testified that he also has flare ups concerning his psoriasis. He testified that his skin cracks and bleeds." (Tr. 245).

"The claimant also indicated that he has poor sleep because of pain, but indicated he gets

about six to eight (6-8) hours at night. With regard to his medication, the claimant noted improvement in his symptoms, but indicated that he gets tired after taking them, and has problems with concentration, and sometimes dizziness." (Tr. 245).

"Pursuant to the order of the Appeals Council, the [ALJ] gave the claimant the opportunity to testify at a second hearing. Essentially, the claimant testified that he continues to experience the same problems. He testified that he experiences constant stinging and burning pain in his knees and elbows. He testified that, while his medications help control his back pain, these medications are less effective in controlling his general joint pain and skin pain." (Tr. 245).

"Notwithstanding the above complaints, the claimant is able to care for his personal needs, and shares the household duties with his girlfriend. The claimant also goes for short walks when his legs aren't bothering him, and watches television and reads." (Tr. 245) (emphasis added)..

"After considering the evidence of record, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below. The medical evidence of record simply does not support the claimant's alleged level of incapacity." (Tr. 245).

"The record also contains additional imaging reports which show some progression, however these again fail to support the claimant's allegations. The MRI of the knees in August 2007 show a progression of the degenerative changes, with a small tear in the posterior horn of the medial meniscus with communication to the inferior articular surface, as well as a joint effusion and fluid in the prepatellar and supratellar bursa, and degenerative signal in the proximal tibia and narrowing of the medial compartment of the knee with thinning of the articular cartilage, but the iliotibial band,

fibular collateral ligament, and medial collateral ligament were intact, as well as the anterior and posterior cruciate ligaments." (Tr. 246).

"The MRI of the right knee in January 2008 reflected more progression of the degenerative changes with new edematous change within the medial aspect of the proximal tibia and medial femoral condyle, moderate to large joint effusion, strain of the lateral collateral ligament and lateral patella retinaculum, stable outward bowing of the medial collateral ligament with extrusion of the body of the medial meniscus, and stable tearing of the posterior horn and medial meniscus with a newly described inner margin tear of the body of the medial meniscus." (Tr. 246).

"Upon a review of the evidence, the [ALJ] finds that the claimant's testimony with regard to his symptoms, to be overstated, inconsistent with, and unsupported by, the great weight of the documentary medical evidence. The claimant alleged that he is unable to perform any work because of chronic pain and medication side-effects; however the record shows that the claimant has been conservatively treated for his medical conditions, and has not been referred to surgery for his various degenerative and arthritic problems. In addition, the examination findings show no significant gait, station, reflex, motor, sensory or neurological deficits to support the claimant's allegations." (Tr. 247).

"The [ALJ] notes that the District Court directed further consideration of the claimant's subjective complaints. It is emphasized that, in partial deference to the claimant's allegations, the [ALJ] placed significant limitations on the claimant's residual functional capacity as set forth above. These limitations acknowledge that the claimant has severe impairments that one would expect to result in some degree of pain and physical limitations. It follows, therefore, that the [ALJ] finds the claimant's description of his symptoms and limitations to be partially credible." (Tr. 247) (emphasis added).

"However, after a review of the record as a whole, the [ALJ] cannot accept the claimant's allegations as entirely credible and without qualification. The claimant described daily activities such as sharing household chores with his wife, going for short walks, exercising as much as possible, reading novels and magazines, and watching television and watches movies, news programs and the Discovery channel. He shops and is able to lift a light bag of groceries. At the initial hearing, he testified that he gets six to eight hours of sleep each night. He testified that he could sit and stand in 20 minute intervals. The claimant displayed some limitations with regard to extending his legs but was able to extend his legs to approximately 75 degrees (out of 90 degrees) from a seated position. These activities are not inconsistent with the above residual functional capacity which, again, places significant limitations on the claimant's ability to perform basic work activities." (Tr. 247) (emphasis added).

"Hence, when examining the claimant's description of his symptoms and limitations in conjunction with the medical evidence of record and the record as a whole, the [ALJ] finds that the record simply does not support greater limitations than those set forth in the residual functional capacity." (Tr. 247) (emphasis added).

### b. Case Law and Analysis for Plaintiff's Credibility

Thus, the ALJ evaluated the record, objective evidence, and medical opinions to evaluate Plaintiff's credibility, in accordance with case law and Social Security regulations.

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96–7p, 61 Fed. Reg. 34483 (July 2, 1996). In particular, an ALJ should consider the following factors: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of the plaintiff's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication for relief of the symptoms; (6) any measures the plaintiff uses or has used to relieve the symptoms; (7) the plaintiff's prior work record; and (8) the plaintiff's demeanor during the hearing. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Jury v. Colvin, No. 3:12-cv-2002, 2014 WL 1028439 (M.D. Pa. Mar. 14, 2014). When the Court reviews the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citing Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

Plaintiff contends the ALJ erred in citing that Plaintiff has not been referred for surgery for his severe impairments of fibromyalgia, psoriasis, psoriatic arthritis, degenerative joint disease of the bilateral knees, and degenerative disc disease of the lumbar spine (Tr. 242). Plaintiff also states the ALJ erred in noting that Dr. Cruciani's found Plaintiff on examination to be "neurologically intact." Pl. Br. at 14, Doc. 21; Pl. Reply at 6, Doc. 24.

The ALJ specifically found: "Upon a review of the evidence, the [ALJ] finds that the claimant's testimony with regard to his symptoms, to be overstated, inconsistent with, and unsupported by, the great weight of the documentary medical evidence. The claimant alleged that he is unable to perform any work because of chronic pain and medication side-effects; however the record shows that the claimant has been conservatively treated for his medical conditions, and has

not been referred to surgery for his various degenerative and arthritic problems. In addition, the examination findings show no significant gait, station, reflex, motor, sensory or neurological deficits to support the claimant's allegations." (Tr. 247).

However, the ALJ's mention of the lack of surgery was to only show that Plaintiff has been treated somewhat conservatively and does not have a history of surgical operations. Treatment is one of the factors the ALJ considers pursuant to the regulations. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Similarly, the ALJ's mention that Dr. Cruciani's examination findings show no significant gait, station, reflex, motor, sensory or neurological deficits was also to demonstrate a lack of seriously disabling impairments in the record.

Plaintiff cites the following testimony from the second hearing and states the ALJ mentions daily activities from the first hearing. Pl. Br. at 15, Doc. 21.

"Q Okay. And other than medications, there anything you try to do to either reduce or control your symptoms?

A I - - yeah, I try to exercise as much as possible when I can. This winter has been bad. But other than, other than exercise, I mean I, I read a little bit, you know. And – not a lot, not a whole lot, but you know, just to keep my mind a little sharp, you know.

Q What do you read?

A Books, books and literature, magazines, you know. I won't read a book from cover to cover. I don't think I've ever read a whole – you know what I mean? A few books I have, Treasure Island and stuff like that." (Tr. 183).

The ALJ's discussion of Plaintiff's activities from the first hearing would be appropriate to evaluate Plaintiff's credibility and in accordance with the District Court's remand order.

Plaintiff states his daily activities may support a level of functioning but that is not proof of

ability to work. Pl. Br. at 16, Doc. 21.

However, the regulations require the ALJ to find that Plaintiff is unable to do activities and his disability is expected to last continuously for a year. To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last <u>for a continuous period of not less than 12 months</u>." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A) (emphasis added). Thus, Plaintiff's impairments and inability to do activities must also meet the durational requirement.

Moreover, as Plaintiff cited in his brief, his treating rheumatologist, Mark Cruciani, M.D., noted on March 23, 2010, that Plaintiff "is able to carry out his ADL's [activities of daily living]." Dr. Cruciani decided to "increase his MS Contin [morphine sulfate] to 2 in the a.m., 1 in the afternoon and 1 in the p.m. He will also continue the Percocet. He shows no sign of drug seeking behavior or side effects from the medications. If he's still having trouble next visit, I may inject his elbows." (Tr. 324).

Plaintiff states the ALJ failed to consider the effects of psoriasis and cited the following testimony. Pl. Br. at 16, 20, Doc. 21.

"Q When your hands break out, do you have trouble gripping and grasping things?

A Yes. All the time. I have problems picking things up, grasping things, buttoning my shirts. It's embarrassing, but I have to get help from my, my girlfriend, which is common law wife, 25 years. She helps me and - - get dressed a little bit, you know.

Q Right now your hands are at a good cycle?

A They're in a decent cycle, but it's starting. It's starting right now. Within two days, they'll be a mess, I know they will be.

Q Will they kind of mirror the kind of breakouts you have with your other joints in your body?

A Worse. My hands get really worse.

Q Okay. Can you describe the pain that you have, Mark?

A My knees, it's just a constant stinging, burning and throbbing. It's always there. And when I walk, it grinds. They both grind. My elbows are - - the pain is also a stinging and a burning, very tender to touch. If you were just to touch my elbows, the pain is there and that's just about all the time. It's – it doesn't let up. And my back pain is – that's more controlled with the medication. The medication does work on the other parts also when I take it. But I'd say not as effective for – as maybe my back, you

Q Okay, so your back –

A (INAUDIBLE).

Q - - is better with the pain medicine?

A A little better. Yes, I'd say so, yes. But it, it does work on the other parts too.

Q Okay.

A But I think because it's a skin disease, I'm not sure. I don't know, but it, it just tends to last, you know, the skin and down into the bones. I'm not sure how it works." (Tr. 188).

Despite Plaintiff's argument, the ALJ did consider the effects of the psoriasis. "[T]he [ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objection medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record. In this case, the claimant alleges that he is unable to work because of pain in his knees, ankles and lower back, as

well as psoriasis, claiming he is unable to stand long, and [can] hardly bend. At the hearing, the claimant testified that he has pain on a daily basis in his back, knees, and ankles. He testified that his hands and knees swell. He alleges difficulties standing and sitting for prolonged periods. He testified that he also has flare ups concerning his psoriasis. He testified that his skin cracks and bleeds . . . Pursuant to the order of the Appeals Council, the [ALJ] gave the claimant the opportunity to testify at a second hearing. Essentially, the claimant testified that he continues to experience the same problems. He testified that he experiences constant stinging and burning pain in his knees and elbows. He testified that, while his medications help control his back pain, these medications are less effective in controlling his general joint pain and skin pain." (Tr. 245).

Plaintiff contends the ALJ ignored or did not properly credit the side effects and limitations of pain medications including drowsiness and being tired. Pl. Br. at 16-17, Doc. 21.

However, the ALJ considered the effects and limitations of Plaintiff's medications.

"Although the [ALJ] found that the claimant's psychological impairment was non-severe, this condition in combination with the claimant's side-effects of medication and pain cause an increase in limitation to the claimant's concentration, pace and persistence. Thus, the [ALJ] finds that the claimant has moderate difficulties with concentration, persistence or pace. The remaining findings under the B criteria remain unchanged. An appropriate limitation was included in the following residual functional capacity . . . The claimant also indicated that he has poor sleep because of pain, but indicated he gets about six to eight (6-8) hours at night. With regard to his medication, the claimant noted improvement in his symptoms, but indicated that he gets tired after taking them, and has problems with concentration, and sometimes dizziness . . . Dr. Horchos opined that the claimant's medication regime did not appear to cloud his sensorium to the point where it would be difficult for the claimant to function from a cognitive standpoint. In completing a Medical Source

Statement, Dr. Horchos found that the claimant could lift and carry up to ten (10) pounds occasionally, stand and / or walk up to four (4) hours, and had no limitations on sitting. He further opined that the claimant had no push / pull limitations; however found occasional postural limitations, as well as limitations on reaching, handling, and fingering, and noted the claimant should avoid vibrations." (Tr. 243, 245, 248).

Even though the ALJ did not find Plaintiff's testimony to be entire credible, the ALJ still credited Plaintiff's subjective complaints of pain to a great extent by limiting him to a modified range of sedentary work, whereas his past relevant work was at the medium to heavy exertional level (Tr. 46). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (stating that an individual does not need to be pain-free to work); Green v. Astrue, 2011 WL 5593148, at * 4 (E.D. Va. Oct. 11, 2011), adopted by 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). "An individual does not have to be pain-free in order to be found 'not disabled,'" particularly when the work at issue is at a lower exertional level; Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986) (findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding); Andreolli v. Comm'r of Soc. Sec., 2008 WL 5210682, at *4 (W.D. Pa. Dec. 11, 2008). Indeed, that a person cannot work without some pain does not, itself, satisfy the test for disability. Sherrod v. Barnhart, 2002 WL 32350551, at *9 (E.D. Pa., July 31, 2002) (citing Cancel v. Harris, 512 F. Supp. 69 (E.D. Pa. 1981)).

Plaintiff contends he cannot work due to his symptoms of psoriasis, psoriatic arthritis, and degenerative disc and joint disease. He further states Dr. Cruciani's finding supports this allegation that in his professional opinion, it will be difficult for Plaintiff to maintain gainful employment. Pl. Br. at 4, 6, 13-14, 19, Doc. 21 (Tr. 317).

From a review of case law, it appears Plaintiffs with similar allegations of disability have been found capable of performing sedentary work, as decided by the ALJ.

"The ALJ determined that [Plaintiff's] <u>degenerative joint disease</u> and ACM were severe impairments, that these impairments did not meet or equal any of the listed impairments in Appendix 1 of the regulations, <u>see</u> 20 C.F.R. Part 404, App. 1, and that [Plaintiff] was limited to certain <u>sedentary work</u> and unable to perform postural maneuvers. In addition, the ALJ found that [Plaintiff] had limitations in her ability to reach overhead and to use her dominant right upper extremity. Based on the testimony of the vocational expert, the ALJ determined that there was other work in the national economy that [Plaintiff] could perform. Therefore, the ALJ concluded [Plaintiff] was not disabled . . . [Plaintiff's] appeal to the District Court was unsuccessful. This appeal followed. She contends that the ALJ erred by discounting her subjective complaints and the opinions of her physicians. In [Plaintiff's] view, the medical evidence 'clearly and unequivocally' showed that she was disabled for purposes of the Social Security Act. It is well settled that '[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain' and '[w]here medical evidence does support a claimant's complaints of pain, the complaints should then be given great weight.' <u>Mason</u>, 994 F.2d at 1067. Great weight also should be accorded a report from a treating physician, and an ALJ may not substitute her judgment on a medical question for that of a treating physician. <u>Plummer</u>, 186 F.3d at 429. An ALJ, however, 'may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.' <u>Id.</u> (citing <u>Newhouse v. Heckler</u>, 753 F.2d 283, 286 (3d Cir. 1985)). After reviewing the record, we conclude that the ALJ carefully considered the evidence and accorded great weight to [Plaintiff's] testimony and her physicians' reports by finding that she was limited to <u>less than the full range of sedentary work</u>. Indeed, this finding was more limited than the opinion of the state agency medical consultant who reviewed the medical evidence and opined that she was capable of performing light work with postural limitations." <u>Ahmad v. Commissioner of Social Sec.</u>, 531 Fed. Appx. 275, 277 (3d Cir.

2013) (emphasis added).

"Dr. Pandelidis noted [Plaintiff's] x-rays showed moderate disc degeneration and mild lumbar degeneration. A subsequent lumbar MRI confirmed an L4–5 disc herniation with stenosis. On December 28, 2007, [Plaintiff] underwent an L4–5 disc excision; three weeks later, Dr. Pandelidis noted [Plaintiff] was improving but was unable to return to his previous job . . . In May 2009, [Plaintiff] again complained of severe ongoing back pain. Dr. Pandelidis recommended intermittent pain medication and an exercise program to relieve [Plaintiff's] pain. On May 22, 2009, Dr. Pandelidis completed a Department of Public Welfare ('DPW') form that labeled [Plaintiff] as 'permanently disabled.' During the following five months, Dr. Gilhool repeatedly recommended conservative care consisting of pain medication and exercise . . . The ALJ concluded [Plaintiff] had the RFC to perform sedentary work, and the medical records '[did] not show signs, symptoms or functional limitations consistent with the claimant's allegations of disabling severity.' We agree with the District Court that the ALJ's determination was supported by substantial evidence." Schmidt v. Commissioner Social Sec., 465 Fed. Appx. 193, 194-96 (3d Cir. 2012) (emphasis added).

After reviewing the medical record, the ALJ concluded that Plaintiff had the following severe impairments: seronegative spondyloarthritis, ulcerative colitis, and psoriasis . . . Thus, the ALJ's assessment of Plaintiff's RFC for lifting / carrying and standing / walking was the same as Dr. Wyszomierski's opinion, which was, in essence, that Plaintiff is capable of more than sedentary work but less than a full range of light work. Consequently, Plaintiff's argument that the ALJ impermissibly strayed from Dr. Wyszomierski's opinion is simply factually incorrect. Schade v. Colvin, No. 13–1071, 2014 WL 320133, at *2, *8 (W.D. Pa. Jan. 29, 2014) (emphasis added).

"Dr. Maningo's physical examination of Degenaro–Huber revealed "[p]soriatic eruptions on the whole scalp. Scattered lesions were found on the trunk, front and back, abdomen, anterior pelvis,

elbows, posterior neck, and the lower extremities. Psoriatic lesions were also found on the fingernails of both hands . . . The administrative law judge, however, concluded that she had the residual functional capacity to perform a range of <u>sedentary work</u>." <u>Degenaro-Huber v. Astrue</u>, No. 4:11–CV–01424, 2012 WL 6700692, at *4 (M.D. Pa. Dec. 26, 2012) (emphasis added).

"Plaintiff's next office visit with Dr. Tranovich took place on November 5, 2009. At the time, Plaintiff complained of hip, shoulder and hand pain and numbness. Plaintiff's physical examination revealed <u>psoriasis</u> over the dorsal aspect of his hands, marked pitting of his nails, restricted ROM of the MCP and PIP joints of his fingers; and overall stiffness. An anti-inflammatory medication was prescribed for the psoriasis. A month later, Plaintiff was seen by Dr. Tranovich for a complaint of right <u>knee pain</u>. At that time, Plaintiff continued to report <u>multiple musculoskeletal problems as well as psoriasis and psoriatic arthritic changes in his hands</u> . . . the ALJ assessed Plaintiff's RFC, concluding that Plaintiff retained the RFC to perform <u>sedentary work with a sit / stand option</u> . . ." <u>Ethridge v. Astrue</u>, No. 11–543, 2012 WL 1428892, at *4, *6 (W.D. Pa. Apr. 24, 2012) (emphasis added).

Thus, the ALJ's decision was consistent with prior case law, the medical history in the record, and Plaintiff's testimony at the ALJ hearings. Accordingly, substantial evidence supports the ALJ's findings regarding Plaintiff's credibility.

## V.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; <u>Brown</u>, 845 F.2d at 1213; <u>Johnson</u>, 529 F.3d at 200; <u>Pierce</u>, 487 U.S. at 552; <u>Hartranft</u>, 181 F.3d at 360; <u>Plummer</u>, 186 F.3d at 427; <u>Jones</u>, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the evidence as adequate, and the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

An appropriate order in accordance with this memorandum to deny Plaintiff's appeal will follow.

Dated: September 24, 2014            s/Gerald B. Cohn
                                             GERALD B. COHN
                                  UNITED STATES MAGISTRATE JUDGE